TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-07-00586-CR

NO. 03-07-00587-CR






Claude Wayne Chadwick, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT

NOS. A-04-0990-S & A-04-0991-S, HONORABLE V. MURRAY JORDAN, JUDGE PRESIDING





O P I N I O N


 These two cause numbers were consolidated for trial. In cause number A-04-0990-S,
a jury found appellant Claude Wayne Chadwick guilty of assaulting a public servant. See Tex. Penal
Code Ann. § 22.01(b)(1) (West Supp. 2008). In cause number A-04-0991-S, the jury
found Chadwick guilty of attempting to take a weapon from a peace officer. See id. § 38.14
(West Supp. 2008). The jury sentenced Chadwick to fifty years' imprisonment for the
assault offense and twenty years' imprisonment for the offense of attempting to take a weapon from
a peace officer. The trial court pronounced sentence in accordance with the jury's verdict. On
appeal, Chadwick argues that the trial court erred when it denied his request to proceed pro se and
that the evidence was legally and factually insufficient to support the verdicts. Because we
determine that the trial court did not err in denying Chadwick's motion to proceed pro se and that
the evidence was legally and factually sufficient to support the verdicts, we affirm the convictions.


BACKGROUND

 On the morning of February 11, 2004, Chadwick was at the Tom Green
County Courthouse waiting to see a judge on an unrelated case. Chadwick was an inmate in the
county jail and was being guarded in an otherwise empty courtroom by a transport officer,
Deputy Sheriff Jerry Rychlik. Chadwick was restrained by a chain that circled his arms and chest,
limiting the mobility of his arms, and by handcuffs.

 Rychlik testified that he was informed, late in the morning, that the judge was not
going to see Chadwick. According to Rychlik, when he told Chadwick they were going to return to
the jailhouse without seeing the judge, Chadwick responded, "That's bullshit. I'm going to see the
judge." Rychlik testified that he told Chadwick to calm down and return with him to the jail, to
which Chadwick responded, "You better get some backup, because I'm going to see the judge,
Jerry." According to Rychlik, he walked over to Chadwick and reached out, at which point
Chadwick "lunged" at Rychlik. Rychlik testified:


Well, when he lunged at me, he pinned me against the chair rail there in the
courtroom. And I was in a position where I could not fall over, I could not--I
couldn't go nowhere. And I felt pressure on my gun. Well, I quickly pushed--I
pushed down as--as hard as I could because he was trying to get my gun.



In the ensuing struggle, Rychlik testified that Chadwick was using both hands, which were
handcuffed together, to pull up on Rychlik's gun, which was snapped into Rychlik's holster on the
right side of his waist. At the same time, Rychlik testified, he felt Chadwick kick his left leg several
times. After a few seconds of struggle, Rychlik saw Bailiff Philip Race in the hall and called out to
him for help. Rychlik testified that Race came into the room and attempted to pull Rychlik away
from Chadwick, and when that did not work, Race instead pulled Chadwick off of Rychlik and all
three of them tumbled to the floor. At that point, Rychlik noticed that his gun holster was
unsnapped, though the gun was never removed from the holster.

 Race testified that he had been patrolling the courthouse hallway when he overheard
Chadwick arguing with Rychlik about returning to the jail and that he decided "to stay real close"
in case there was trouble. Race testified that he did not see the beginning of the alleged altercation,
but that "the next thing [he] knew, [he] looked in the door and Jerry was bent over" the railing that
separated the gallery from the bar tables. According to Race, Chadwick was pushing up against the
right side of Rychlik's body, which made Race concerned that Chadwick could take Rychlik's gun. 
Race testified that he went into the courtroom and grabbed Rychlik's left leg to try to pull him away
from the railing. When Rychlik exclaimed, Race then pushed Chadwick away from Rychlik before
using a pressure point to "take [Chadwick] down."

 Chadwick was initially found incompetent to stand trial for the charges in the instant
prosecution and was committed to Big Spring State Hospital in June 2004. In December 2006, the
Texas Department of State Health Services issued a report concluding that Chadwick's competency
had been restored and he was returned to Tom Green County. At Chadwick's request, he was
examined by a defense expert, who also concluded that Chadwick was competent. On the basis of
these reports, the trial court found Chadwick competent to stand trial on August 28, 2007. The day
the case was set for pre-trial and jury voir dire, Chadwick initially refused to come to the courthouse. 
Chadwick's attorney told the trial court that Chadwick had also refused to speak with him the night
before or cooperate in preparing his defense and requested that Chadwick be declared incompetent. 
The court denied the request. Chadwick agreed to come to the courthouse after being permitted to
make a video statement. When he arrived, Chadwick expressed displeasure with his appointed
counsel and requested to proceed pro se. The trial court denied his request and instructed defense
counsel to continue on the case.

 The jury found Chadwick guilty of assaulting a public servant and of attempting to
take a weapon from a peace officer. This appeal followed. Chadwick argues that the trial court erred
in denying his request to proceed pro se and that the evidence was legally and factually insufficient
to support the verdicts.


DISCUSSION

Self-Representation

 In his first two points of error, Chadwick argues that the trial court erred when it
refused his request to represent himself. Chadwick contends that, because he was found competent
to stand trial, he was therefore also competent to waive his right to counsel and proceed pro se. The
State counters that the court did not err in denying Chadwick's request to represent himself, arguing
that Chadwick's request was made for the purpose of disrupting and delaying the trial and that
Chadwick, while competent to stand trial, was not competent to represent himself. (1)

 Criminal defendants have a right to refuse counsel and represent themselves at trial
under the sixth and fourteenth amendments to the federal constitution. See U.S. Const. amend. VI 
(right to counsel), amend XIV, § 1; see also Faretta v. California, 422 U.S. 806, 818-19 (1974)
(right to self-representation implied in sixth amendment; sixth amendment applies to states through
due-process clause of fourteenth amendment); Ex parte Winton, 837 S.W.2d 134, 135 (Tex. Crim.
App. 1992); Funderburg v. State, 717 S.W.2d 637, 641-42 (Tex. Crim. App. 1986). The right to
self-representation is also protected by state law. See Tex. Const. art. I, § 10 (guaranteeing criminal
defendant "the right of being heard by himself or counsel"); Tex. Code Crim. Proc. Ann. art. 1.051(f)
(West Supp. 2008) (allowing criminal defendants to "voluntarily and intelligently waive in writing
the right to counsel"). This right is not unlimited; there is no right to "engag[e] in serious and
obstructionist conduct" or to "abuse the dignity of the courtroom." Faretta, 422 U.S. at 834-35
n.46; see also Winton, 837 S.W.2d at 135-36.

 The United States Supreme Court recently rejected the argument that if a defendant
is mentally competent to stand trial, he is necessarily competent to represent himself as well. 
Indiana v. Edwards, ___ U.S. ___ ,128 S.Ct. 2379, 2386-87 (2008). (2) While the test for competence
to stand trial asks whether a defendant has sufficient present ability to "consult" with his lawyer and
"assist" in preparing a defense, the test for competence to proceed pro se is whether a defendant has
the ability to present his own defense without the assistance of counsel. Id. at 2386; Guerrero
v. State, ___ S.W.3d ___, Nos. 04-07-00583-CR, 04-07-00584-CR, 2008 Tex. App. Lexis 6119, at
*7 (Tex. App.--San Antonio Aug. 13, 2008, pet. filed) (noting that under Edwards "competence to
represent oneself during trial proceedings involves a higher standard than that required for
competence to stand trial"). When faced with a request to proceed pro se by a defendant with a
history of serious mental illness, trial courts may "take realistic account of the particular defendant's
mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is
mentally competent to do so." Edwards, 128 S.Ct. at 2387-88. 

 Chadwick argues that the trial court's refusal to allow him to proceed pro se cannot
be upheld under Edwards because the trial court failed to issue a finding that he was incompetent
to represent himself. However, where a trial court's decision rests on a determination of facts and
the trial court does not issue findings of fact, we will imply any findings supported by the evidence
and necessary to support the trial court's order. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997) ("[I]n reviewing a trial court's ruling on an 'application of law to fact question,' the
appellate courts should view the evidence in the light most favorable to the trial court's ruling.");
cf. Gutierrez v. State, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007) (imply findings when reviewing
suppression of evidence determination). The trial court, which has the opportunity to observe the
defendant's demeanor and will often have also conducted the competency hearing, is "best able to
make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a
particular defendant." Edwards, 128 S.Ct. at 2387.

 The trial court had sufficient evidence before it to support a finding that Chadwick
was incompetent to represent himself. At the August 2007 pre-trial hearing and on the first day of
trial, Chadwick interrupted his attorney several times and personally argued several motions that his
attorney did not adopt. This gave the trial court the opportunity to observe the extent of Chadwick's
ability to conduct his own defense at trial. Chadwick jumped from one topic to another, devoting
most of his time to ad hominem attacks on the prosecutor, the judge, the bailiffs, judges from his
prior cases, and other county and state officials. Many of his arguments were simply conclusory,
while others were incoherent. For example, in trying to persuade the court that the prosecutor should
be recused, Chadwick argued:


I'm trying to bring together the thought, Judge, that his misconduct will need to be
questioned in the grand jury matters and in many matters, so it's--it's relevant to
him. It's just bringing up different topics required to show multiple areas and
collateral consequences from him and repetition of it reoccurring repeatedly.



The trial court also had before it several incoherent written motions that Chadwick had filed pro se. 

 Given all of the foregoing, the trial court could have reasonably concluded that
Chadwick was not competent to represent himself and that, if he had been allowed to do so, he
would not have been able to receive a fair trial. See Edwards, 128 S.Ct. at 2387. That the trial court
came to this conclusion is supported by the trial court's notation in its docketing sheet that the court
"could not properly conduct trial with defendant representing himself." (3) We therefore overrule
Chadwick's first two points of error.


Legal and Factual Sufficiency

 Chadwick next argues that the evidence was legally and factually insufficient to
support the verdicts of assault on a public servant (point of error three) and attempting to take a
weapon from a peace officer (point of error four).

 In reviewing the legal sufficiency of the evidence, we review all of the evidence in
the light most favorable to the verdict. Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim.
App. 2007). The question presented is whether a rational jury could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979);
Clayton, 235 S.W.3d at 778. We assume that the jury resolved conflicts in the testimony, weighed
the evidence, and drew reasonable inferences in a manner that supports the verdict. Clayton,
235 S.W.3d at 778.

 In reviewing the factual sufficiency of the evidence, we consider all the evidence in
a neutral light, while giving due deference to the jury's determination. See Sims v. State, 99 S.W.3d
600, 604 (Tex. Crim. App. 2003); Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). 
Evidence is factually insufficient when it is so weak that the verdict seems clearly wrong and
manifestly unjust, or when the verdict is against the great weight and preponderance of the evidence. 
Berry v. State, 233 S.W.3d 847, 854 (Tex. Crim. App. 2007); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The jury is the sole judge of the credibility of the witnesses and the
weight to be accorded their testimony. Vasquez, 67 S.W.3d at 236. We may not reweigh the
evidence and substitute our judgment for that of the jury. Watson, 204 S.W.3d at 417; King v. State,
29 S.W.3d 556, 563 (Tex. Crim. App. 2000).

 To prove the offense of assault of a public servant, the State must prove that: 
(1) Chadwick intentionally, knowingly, or recklessly caused bodily injury to Rychlik; (2) Rychlik
was a public servant; (3) Chadwick knew Rychlik was a public servant; and (4) Rychlik was
lawfully discharging his official duties at the time of the assault. See Tex. Penal Code
Ann. § 22.01(b)(1); see also Hall v. State, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005). Bodily
injury is defined as "physical pain, illness, or any impairment of physical condition." See Tex. Penal
Code Ann. § 1.07(a)(8) (West Supp. 2008). Chadwick argues that the State failed to prove he caused
bodily injury to Rychlik because the evidence was not legally or factually sufficient to prove that he
kicked Rychlik.

 The jury heard testimony that Rychlik felt Chadwick kick him on the leg several times
and that this caused him physical pain. Rychlik testified that the pain caused him to limp for the rest
of the day and most of the next. Rychlik further testified that he found an abrasion on his left leg the
next day and the jury saw pictures of this injury. Chadwick contends that, because Bailiff Race did
not see Chadwick kick Rychlik, a reasonable jury could not have found that Chadwick caused bodily
injury to Rychlik. Chadwick argues that the only reasonable interpretation of the evidence is that
Rychlik's leg was injured when Race pulled on Rychlik's leg when trying to separate Rychlik and
Chadwick. However, Race did not testify that Chadwick did not kick Rychlik; he testified only that
he did not see Chadwick kick Rychlik. Race further testified that he did not see what happened
between the time he heard the arguing from the hallway and the time he entered the room to see
Rychlik up against the railing. According to Rychlik, Chadwick kicked him in that intervening
period before Race entered the courtroom. At trial, Chadwick attempted to show that Race had in
fact seen the entire altercation and that, therefore, if Race had not seen Chadwick kick Rychlik, then
it did not happen. Defense counsel cross-examined Race using his prior report of the incident, in
which Race wrote that "Jerry went to get Chadwick's arm to escort him out of the courtroom. 
Chadwick walked right into Jerry." On redirect, Race responded that he did not actually see this
happen, and testified, "I just assumed because that's the way I would have done it."

 Chadwick argues that, as the victim, Rychlik is biased and therefore his version of
the story cannot be believed. Therefore, Chadwick reasons, the jury should have credited Race's
testimony as reflected in his written report. The jury, however, is the sole judge of the credibility
of a witness and may believe or disbelieve any part of a witness's testimony. Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim.
App. 1991). The jury was presented with Rychlik's version of the events and Race's version of
events. To the extent these conflicted, it was the jury's job to resolve those conflicts. See Vasquez,
67 S.W.3d at 237. 

 A reasonable jury could have credited Chadwick's version of the events, as well as
Race's testimony that he did not actually see all of the altercation. Viewing the evidence in the light
most favorable to the verdict, we conclude that the jury could have reasonably determined that the
State proved beyond a reasonable doubt that Chadwick kicked Rychlik before Race entered the
room. Viewing the evidence in a neutral light, we conclude that the evidence that Chadwick kicked
Rychlik is not so weak as to make the verdict seem clearly wrong and manifestly unjust, and that the
verdict is not against the great weight and preponderance of the evidence. Therefore, we hold that
the evidence was both legally and factually sufficient to support the verdict of guilty of assaulting
a public servant. Chadwick's third point of order is overruled.

 To prove the offense of attempting to take a weapon from a peace officer, the State
must prove that Chadwick (1) intentionally or knowingly and (2) with force (3) attempted to take a
firearm, nightstick, stun gun, or personal protection chemical dispensing device from Rychlik, (4) a
peace officer, (5) with the intention of harming Rychlik or a third person. See Tex. Penal Code Ann.
§ 38.14(b). Chadwick argues that the State did not prove that he "attempted" to take Rychlik's
firearm from him because the State failed to prove any acts by Chadwick that constituted more than
mere preparation. 

 Rychlick testified that he felt pressure on his gun and that while Chadwick was
"pulling up" on his gun, he was "pushing as hard as [he] could" to prevent Chadwick from taking
the gun. Rychlick also testified that the strap on his holster was snapped shut before the struggle
with Chadwick, but he noticed after the altercation that it was unsnapped, though he did not know
how or when during the altercation the strap became unsnapped. Race could not confirm whether
Chadwick was pulling up on Rychlik's weapon, because he could not see Chadwick's hands. Race
did, however, testify that, based on Chadwick's positioning, he was "concerned that [Rychlik's] gun
[would] be taken away from him." 

 Chadwick contends that this evidence is not enough to allow a rational trier of fact
to find that Chadwick attempted to take Rychlik's gun because the gun was never taken from the
holster. However, the State was not required to prove that Chadwick actually took and gained
control of Rychlik's gun--only that he attempted to do so. Even if the jury did not believe that
Chadwick had unsnapped the holster, the testimony that Chadwick was pulling up on the weapon
was enough to establish attempt. See Hackbarth v. State, 617 S.W.2d 944, 946 (Tex. Crim. App.
1981) (attempt does not require proof that every act short of actual commission was accomplished). 
We hold that pulling on the gun, an act that would tend to dislodge the weapon and thus allow
Chadwick to take possession and control of it, constitutes attempt to take the weapon.

 Chadwick also argues that Rychlik's testimony that Chadwick was pulling up on the
gun while Rychlik was pushing down conflicts with Race's testimony that Rychlik was using his
hands to keep from falling over the railing. This contention misconstrues Race's testimony. Race
testified that he could not see Rychlik's hands, but that he "suppos[ed] they were behind him trying
to keep from going over the bar." Furthermore, it is for the factfinder--the jury in this case--to
resolve any conflicts in evidence. See Vasquez, 67 S.W.3d at 237. The jury heard both Rychlik's
and Race's version of events and was free to believe or disbelieve any portion of their testimony. 
See Johnson, 23 S.W.3d at 7; Saxton, 804 S.W.2d at 914. 

 A rational jury could have credited Rychlik's testimony that Chadwick was pulling
up on Rychlik's gun, and thus concluded beyond a reasonable doubt that Chadwick attempted to take
Rychlik's weapon from him. Therefore, we hold that the evidence was legally sufficient to support
the verdict. The evidence that Chadwick attempted to take the gun from Rychlik is not so weak as
to render the guilty verdict manifestly unjust or against the great weight and preponderance of the
evidence. Therefore, the evidence was factually sufficient to support the verdict. We overrule
Chadwick's fourth point of error.


CONCLUSION

 Because we determine that the trial court did not err in denying Chadwick's motion
to proceed pro se and that the evidence was legally and factually sufficient to support the verdicts,
we overrule all points of error and affirm the judgments of conviction.


__________________________________________

 Diane M. Henson

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: January 23, 2009

Publish

1. The State requested leave to file a supplemental brief on November 17, 2008. That motion
is hereby granted. However, we did not consider Appendix B to that brief, which was not in the
record filed by the trial court. See Quorum Int'l v. Tarrant Appraisal Dist., 114 S.W.3d 568, 572
(Tex. App.--Fort Worth 2003, pet. denied) (appellate courts are bound by record as filed).

2. Prior to Indiana v. Edwards, ___ U.S. ___ , 128 S.Ct. 2379, 2386-87 (2008), Texas courts
judged competency to stand trial and competency to waive the right to counsel under the same
standard. See Ex parte Mines, 26 S.W.3d 910, 912 (Tex. Crim. App. 2000) ("The competency
standard for pleading guilty or waiving the right to counsel at a criminal trial is not higher than the
competency standard for standing trial . . . .") (citing Godinez v. Moran, 509 U.S. 389, 399 (1993)). 
The decision to apply the same standard to both inquiries was based on the Supreme Court's prior
ruling in Godinez, in which it "reject[ed] the notion that competence to plead guilty or to waive the
right to counsel must be measured by a standard that is higher than (or even different from)" the
standard for competence to stand trial. Godinez, 509 U.S. at 398. 


 In Edwards, however, the Supreme Court distinguished Godinez, where the defendant sought
to waive the right to counsel and then plead guilty, from cases where the defendant seeks to waive
the right to counsel and then proceed to trial. Edwards, 128 S.Ct. at 2385. Because Chadwick
sought to conduct the trial himself, we are bound by Edwards, wherein the Court held that "the
Constitution permits States to insist upon representation by counsel for those competent enough to
stand trial . . . but who still suffer from severe mental illness to the point where they are not
competent to conduct trial proceedings themselves." Id. at 2388; see also Guerrero v. State,
___ S.W.3d ___, Nos. 04-07-00583-CR, 04-07-00584-CR, 2008 Tex. App. Lexis 6119, at *7
(Tex. App.--San Antonio Aug. 13, 2008, pet. filed) (noting that, under Edwards, "competence to
represent oneself during trial proceedings involves a higher standard than that required for
competence to stand trial"). But see Resto v. State, No. 10-07-00230-CR, 2008 Tex. App. Lexis
7021, at *4 (Tex. App.--Waco Sep. 17, 2008, no pet. h.) (mem. op., not designated for publication)
(stating that Edwards permitted, but did not require, a state to adopt a different standard, and thus
"Edwards does not overrule or even challenge that prior law").
3. When denying Chadwick's request to represent himself, the trial court also noted orally
that "A lot of what the Defendant has talked about, about the whole state being prejudiced against
him, is--is mostly irrelevant to this--this case . . . ."